PHINLEY HOLDING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88988. Promulgated December 31, 1940.

*Courtland Palmer, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

216

**OPINION.**

LEECH: The ultimate fact which we have found, that the petitioner received 8,100 shares of the stock of United Dry Docks, Inc., in exchange for the issue of all of its capital stock, determines the issues here. Since the consideration for this transfer of stock to petitioner was the issuance of petitioner's capital stock, it was not received by petitioner as a commission or compensation in the sale of the assets of the Morse Co. to United Dry Docks, Inc., as determined by respondent. It follows that the preferred stock in question did not constitute income to petitioner.

This conclusion is, we think, inescapable on the record. The only evidence supporting the determination of the respondent that this preferred stock was received as income by petitioner is a comparatively short affidavit by Edward P. Farley, without detail, which was used

by Courtland Palmer, attorney for the Morse Co., in a controversy with the Internal Revenue Bureau in connection with a tax deficiency proposed against the Morse Co., upon the basis that the Morse Co. had received the 10,000 shares of United Dry Docks, Inc., preferred stock here in question, as a part of the consideration for the sale of its assets to United Dry Docks, Inc. This affidavit, introduced here without objection and without limitation of the purpose for which it might be used, is so contradicted by established facts and circumstances that we are convinced of its falsity. Although subpoenaed by respondent, Farley was not called as a witness, for the reason, as stated by counsel for respondent, he was unable because of an engagement to be present until the next day, and "his testimony would only be cumulative, so far as I can see."

Farley, in his affidavit, states that in negotiating the sale of the assets of the Morse Co. to United Dry Docks, Inc., he was acting for petitioner, that the option secured by him was the property of petitioner, and that the $1,000,000 in preferred stock of the United Dry Docks, Inc., which was held out of the consideration paid by that company to the Morse Co., was, in fact, a commission received by petitioner for making the sale.

In our opinion, this statement is disproved.

Courtland Palmer, the attorney for the Morse Co., testified that he was present at a conference of Morse and Farley following the "gift" by Farley of 1,900 shares of this preferred stock to Leary, the purpose of which conference was to determine the disposition of the remaining 8,100 shares between Farley and Morse. He stated that Farley had never been employed by petitioner nor had any contact with or knowledge of it, that Farley received the 10,000 shares of United Dry Docks, Inc., preferred stock as his own, that the transfer of the 8,100 shares to petitioner was at Palmer's suggestion after he called Morse's attention to the fact that Morse had organized the petitioner corporation which had never been used and that it could be utilized for the purpose of holding title to this stock if Morse and Farley so desired. His suggestion, he says, was accepted, the transfer was thereupon effected and a resolution entered on petitioner's minutes authorizing the issuance of all of its stock, in equal shares, to Farley and Mrs. Morse, in exchange for these 8,100 shares of preferred stock of United Dry Docks, Inc.

This testimony is corroborated by independent facts and disinterested testimony. The attorney for United Dry Docks, Inc., who conducted the negotiations for his company, testified that all of these negotiations were held with Morse and Farley; that the option that was ultimately exercised was executed in the office of United Dry Docks, Inc., by Morse as vice president of the Morse Co. and there given to Farley; that Farley thereupon executed an assignment of the option to United

Dry Docks, Inc.; that both instruments were witnessed by his secretary; that Leary was not present; that no mention was made of the petitioner; and that he never heard of the petitioner until he saw its name on the books of the United Dry Docks, Inc., some months later, as the holder of 8,100 shares of stock which his company had paid to the Morse Co. for its assets.

The evidence is that no stock of petitioner was issued until after the sale to United Dry Docks, Inc., when 50 shares were issued to Farley and 50 shares to Ada M. Morse, the wife of Edward P. Morse. The minutes of the petitioner, in evidence, show that this stock was "authorized to be issued for 8,100 shares of the 6% preferred stock of United Dry Docks, Inc." Another entry in those books, a year and a half later, records the action of the directors in authorizing the transfer of 4,050 shares, or one-half of the stock, to a nominee of Farley's, in exchange for the surrender of Farley's one-half of the issued stock. That entry also recites that the shares of stock, basing the present dispute, were acquired by petitioner "in consideration of" the stock to be surrendered by Farley. Admittedly, Palmer was the secretary of the petitioner and prepared these minutes, but, to disregard them, we must assume that he deliberately forged these entries. The record, in our opinion, prevents this assumption.

An affidavit of Leary, used in the tax controversy involving the Morse Co., and introduced here without objection and without limitation as to its use, supports substantially all the important facts as found, excluding the receipt and disposition of the United Dry Docks, Inc., preferred stock in connection with the transaction, about which Leary swears he knew nothing until September 1936. This affidavit, however, squarely contradicts the Farley affidavit that the entire 10,000 shares of preferred stock of United Dry Docks, Inc., in controversy here, were the property of petitioner. Leary there states in substance that after the sale to United Dry Docks, Inc., Farley, individually, presented him with 1,900 shares of the preferred stock of that company which he (Farley) owned, and advised Leary that 1,100 more shares of his preferred stock of United Dry Docks, Inc., were being presented to Morse.

After the consummation of the sale of the assets of the Morse Co. and prior to the transfer of the 8,100 shares of preferred stock of United Dry Docks, Inc., to petitioner, the original certificate for the 10,000 shares of that stock, paid by the latter company for the Morse assets, was turned in by Morse and Farley and reissued. The record contains photostatic copies of all the stock certificates. This was at the time when, according to Palmer's testimony, Farley and Morse were conferring as to their split of the stock remaining after the "gift" of 1,900 of the shares to Leary by Farley should have been effected.

The 10,000 shares evidenced by the original certificate, when canceled, were reissued by the transfer agent, at Farley's direction, in 9 certificates for 1,000 shares each, 1 certificate for 900 shares, and 2 certificates for 50 shares each. It is quite apparent that this split-up was to permit the transfer of 1,900 shares to Leary, as was done by transferring one of the certificates for 1,000 and the one for 900, and to permit of a division of the remaining 8,100 shares standing in the name of the Morse Co., equally as contemplated, or 4,050 shares to Farley and Morse, each. It would have been quite unnecessary to so reissue the shares evidenced by the one original certificate for 10,000 shares, if they were to be transferred to petitioner as a commission belonging to it. Of the certificates covering the 10,000 shares of United Dry Docks, Inc., stock, all issued to the Morse Co., only two, in a total of 1,900 shares, were presented to Leary to sign in connection with their transfer. These were the ones representing his "gift" from Farley. The certificates covering the remaining 8,100 shares in the transfer to petitioner, were signed by Morse as vice president of the Morse Co. and his signature was witnessed by Palmer. In respect to his signature appearing on the two certificates for 1,900 shares, Leary testified that he had no recollection of signing them, but did not doubt that he had done so. He assumed that they had been brought to him by Morse with other papers or certificates for his signature, which he was accustomed to affix without question or examination under such conditions.

Respondent contends that, to find that petitioner did not acquire the United Dry Docks, Inc., preferred stock as a commission but received the stock in exchange for the issue of its own stock, we must accept as true the testimony of Palmer, the attorney representing the Morse Co. He argues that this witness has been discredited by the contradictions which the record discloses in his statements, made at various times under different conditions, as to the facts in connection with the several transactions.

Whatever may be said of these inconsistencies and the merit or absence of merit in Palmer's explanation of them, we are convinced his testimony here as to the controlling fact in this proceeding is correct. It is, in our judgment, corroborated by the numerous independently established facts and circumstances heretofore pointed out.

We conclude, and have so found, that the preferred stock of United Dry Docks, Inc., was received by Farley and that not until after it was so received was it transferred to petitioner and then only in exchange for the issuance of its capital stock. The deficiency falls, and with it both penalties.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

TURNER dissents.